**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CARRIAGE WAY LIMITED PARTNERSHIP,

               PLAINTIFF,

v.

LINCOLN NATIONAL LIFE INSURANCE
COMPANY,

               DEFENDANT.

_____/

CIVIL ACTION NO. 04-71544

HONORABLE ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

MAGISTRATE DONALD A. SCHEER

## <u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IT IN PART [D/E # 46]</u>

The court finds that even though the contract was ambiguous with respect to the "effective annual compound yield," summary judgment is granted in favor of Defendant Lincoln National Life Insurance Company since the extrinsic evidence presented to this court supports only one of the conflicting interpretations. The court also finds that Lincoln used an improper outstanding balance at the time of prepayment, since Plaintiff had timely paid the scheduled September payment. For the following reasons, the case is dismissed and Lincoln is ordered to pay Carriage Way the difference between the prepayment penalty calculated with the improper and proper outstanding balances.

The case involves Defendant Lincoln National Life Insurance Company's assessment of prepayment penalties to real estate company Carriage Way Limited Partnership on two related and refinanced loans. In Carriage Way's amended complaint, Plaintiff brings this proposed class action alleging that Lincoln breached its loan contract in two ways. The first alleged breach, which is the basis for the class action, was the result of Lincoln deviating from the established prepayment calculation formula by using inflated rates to calculate the prepayment penalty. Plaintiffs allege that the Defendant's miscalculation yielded an excess penalty of $97,614.12 for the original loan, and $16,611.54 for the second additional loan. Plaintiff seeks to have a class certified where the class is defined as those who have been assessed a prepayment penalty by

*Carriage Way v. Lincoln National*, # 04-71544

Defendant in excess of contract terms.

Plaintiff also alleges that Lincoln breached its contract by relying on improper balances in calculating the premium. Plaintiff seeks to enjoin and restrain the Defendant from charging penalties in excess of loan agreements and requests compensatory damages for the breaches.

## I. Procedural History

Prior to Carriage Way's loan from Lincoln, Carriage Way through its managing partner took out a commercial real estate loan to fund the acquisition and construction of a manufactured home complex.  In 1993, the managing partner contacted commercial real estate broker Creighton Weber and a real estate law firm to advise him on how to refinance the previous loan. Carriage Way compared commercial mortgages from life insurance companies (like Lincoln) and commercial banks.   Their research discovered that prepayment premium provision in commercial bank loans were less onerous than life insurance companies mortgages but had higher interest rates.  Carriage Way decided to borrow $10.6 million from Lincoln to refinance its prior commercial real estate loan at the nominal rate of 8.5%.

The loan document included this prepayment premium provision that permitted Carriage Way to make a full prepayment on the outstanding principal after February 1, 1999,

> a premium on the principal amount so prepaid, which prepayment premium shall be equal to the greater of
>
> (a) The present value (discounted at the Treasury Rate as hereinafter defined) of the excess (if any) obtained by subtracting the effective annual compound yield (at the time of prepayment) of the United States Treasury Issues (other than so-called 'flower bonds') with maturity dates that match, as closely as possible, the Original Maturity Date (the 'Treasury Rate') from the effective annual compounded yield of this Note, multiplied by the outstanding principal balance (at the time of prepayment) of this Note, multiplied by the number of years (and any fraction thereof) remaining between the date of prepayment and the Original Maturity Date (such amount shall be computed as if the amount determined in accordance with the preceding sentence was paid in equal monthly installments after the date of such prepayment through the Original Maturity Date); or
> (b) One percent (1%) of the outstanding principal balance (at the time of prepayment) of this Notice.

In September of 1998, Carriage Way executed a modification to the loan that increased

*Carriage Way v. Lincoln National*, # 04-71544

the Original Loan Amount by two million dollars ("Construction Loan") but with a lower rate of 7.4%.

Beginning in the fall of 2003, Carriage Way began taking steps to refinance its two loans in order to take advantage of lower interest rates.  During the process, Carriage Way found a new loan that had an interest rate 4% lower than the their loans with Lincoln.  In August 2003, Carriage Way consultants projected the prepayment premiums to be between $1.5 and $1.7 million to refinance both loans.  The actual cost was $1,626,238.

On August 27, 2003, Carriage Way began contesting Lincoln's prepayment calculation. They argued that Lincoln was utilizing an inappropriate "effective annual compounded yield" as well as using the wrong principal balance. The projected prepayment date for the Original and Construction loans was September 1, 2003, Labor Day.  Despite the disagreement between Carriage Way and Lincoln, Carriage Way paid in full, under protest, the entire amount demanded by Lincoln. On September 17, 2003, Carriage Way's newly refinanced loan closed with its much lower interest rates.

In April 2004, Carriage Way filed this lawsuit claiming that the proper effective annual compounded yield ("EACY") of the Original Note should have been 8.5% and that the effective compounded yield of the Construction Note should have been 7.4%.  From these numbers the EACY of the US Treasury listed as 3.56% at the time, would be subtracted.  That number (4.94% and 3.84% respectively) would then be multiplied by the outstanding value and the time remaining on the loan.  On August 31, 2004, Carriage Way filed an amended complaint which changed their projected EACY rates in their complaint to the lower rates of 6.08% and 5.54%.

Defendant has filed a Motion for Judgment on the Pleadings or alternatively Summary Judgment pursuant to Fed.R.Civ.P 56 on both counts.

## II. Standards of Review

Once the pleadings are closed but within such time as not to delay the trial,  any party may move for judgment on the pleading, pursuant to Fed. R. Civ. P. 12(c).

> Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.*, 312 U.S. 45, 85 L. Ed.

*Carriage Way v. Lincoln National*, # 04-71544

> 577, 61 S. Ct. 418 (1941); 5 C. Wright & A. Miller, Federal Practice and
> Procedure (hereinafter Wright & Miller) § 1368, p. 518. All well-pleaded material
> allegations of the pleadings of the opposing party must be taken as true, while all
> contravening assertions in the movants' pleadings are taken as false. Given this
> standard, the motion may be granted only if the moving party is nevertheless
> clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce,*
> *Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.1973); 5 Wright & Miller, § 1368, p.
> 520.

*ATD Corp. v. DaimlerChrysler Corp.*, 261 F. Supp. 2d 887, 893 (E.D. Mich. 2003).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P 56(c).  The moving party bears the initial responsibility of demonstrating that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 91 L. Ed. 2d 265, 106 S. Ct. 2548; 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  Material facts are determined by the substantive law in the case.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). All inferences must be made in a light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

### III. The Formula

Both parties agree that the prepayment calculation is governed by the formula outlined in subsection (a) of the loan document.  The parties disagreement lies over the meaning of the term "effective annual compounded yield" ("EACY").  The parties also disagree on what the outstanding balance was at the time of prepayment.  According to the prepayment penalty provision, the prepayment penalty should be equal to where the USTI is equal to the US Treasury Issue rate at the time of the prepayment:

*(The EACY of the Note - EACY of the USTI) x (Balance) x (years left).*

Lincoln argues that the EACY should be calculated according to its commonly understood definition in the industry.  Lincoln's support for this includes a definition from a corporate finance text book, expert testimony in the form of an affidavit, and a real estate journal definition.  Their expert stated that the prepayment formula is standard and accepted provision in

*Carriage Way v. Lincoln National*, # 04-71544

commercial mortgages, supporting his theory with corporate finance text books as well as Freddie Mac's interpretation of the term.

Lincoln's formulation of the equation assumes that the company would invest both the principal and interest from the Carriage Way loans in the ordinary course at the same nominal rate as the Original Note 8.5%, which would be compounded monthly. Where ""R" equals the rate of the loan and "T" equals the number of times the investment compounds in a year, the equation for the EACY of a particular rate can be written in this way:

$$(1 + R/T)^{T} - 1 = EACY$$

Plugging in the Rate of the notes (8.5% and 7.4%) and number of times the investment compounds a year (12), the EACY of Original Loan would be 8.839% and the EACY for the Construction Note would be 7.656%.

The equation requires the EACY of the Note to be subtracted by the EACY of the US Treasury Issues rate which is then multiplied by the outstanding balance and the number of years remaining on the note. By subtracting the EACY of the USTI from the EACY of the Note, the equation provides a form of mitigating the damages. The rationale is that Lincoln could safely invest the prepaid outstanding balance and gain interest equal to the USTI compounded monthly for the remaining years. Thus, Lincoln shouldn't be paid the complete amount of what they would stand to make if the loan were repaid on schedule. Instead to be in the position that they would have been in had Carriage Way continued making payments on the loan, Lincoln would need to be paid the difference between the Notes EACY and the USTI's EACY.

Carriage Way argues that the EACY is not an industry defined term and believes that Lincoln's prepayment calculation of EACY is what caused the first breach of contract. Despite the fact that the loan documents do not mention the term, Carriage Way argues that the calculation should include "reinvestment risks," risks such as lower interest rates. Plaintiff argues that the correct calculation of the EACY for the Notes would be equal to what Lincoln would have reinvested the payments received at in the ordinary course of business. Carriage Way chooses U.S. Treasury Rate Issues rate of 3.53% compounded as the rate of reinvestment in the ordinary course of business. In other words, Carriage Way would take the loan payment for

*Carriage Way v. Lincoln National*, # 04-71544

each month, invest the money with a rate of return of 3.53%, compound it monthly, and add each month's payment to the equation. Once the two loans terms were over, Carriage Way calculates that the returns would be equal to 6.08% and 5.54% for the Original and the Construction loans respectively.

In interpreting contract language, the primary goal is honor the intent of the parties. *Rasheed v. Chrysler Corp*., 445 Mich. 109, 128 (1994).

> The initial question whether contract language is ambiguous is a question of law. If the contract language is clear and unambiguous, its meaning is a question of law. *Dykema v Muskegon Piston Ring Co*, 348 Mich. 129, 138; 82 N.W.2d 467 (1957). Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact. *Zinchook v Turkewycz*, 128 Mich. App. 513; 340 N.W.2d 844 (1983).

*Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist*., 452 Mich. 309, 323 (1996). An ambiguity exists where there are alternative, reasonable interpretations. *Wright v. DaimlerChrysler Corp*., 220 F. Supp. 2d 832, 842 (E.D. Mich. 2002); *Petovello v Murray*, 139 Mich. App. 639; 362 N.W.2d 857 (1984).

When looking at the four corners of the document, the phrase "effective annual compounded yield" is both undefined and difficult to interpret. The term "effective annual compounded yield" appears twice in the contract within the same sentence. In one instance the term "effective annual compounded yield" modifies the rate of the Note and the other time it modifies the rate of US Treasury Issues. The phrase is meant to alter the named rates of both the Notes and the US Treasury Issues. It seems clear, the nominal rates are to be compounded yearly but without a background in finance, the definition of the terms is not apparent from the context. Thus, this Court finds the phrase ambiguous.

Even though this Court finds that the phrase is ambiguous, summary judgment may still be appropriate. The Sixth Circuit has stated:

> If... the court discerns ambiguity, the next step- involving an examination of extrinsic evidence- becomes essential... Summary judgment may be appropriate even if ambiguity lurks as long as the extrinsic evidence presented to the court supports only one of the conflicting interpretations.

*Carriage Way v. Lincoln National*, # 04-71544

*United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 406 (6th Cir. 2004) (citations omitted).

      Turning to the extrinsic evidence, the question becomes whether there are two reasonable interpretations of the phrase "effective annual compounded yield." Lincoln has produced a wealth of material that supports its theory that the phrase is an algebraic formula known to those in finance. Lincoln has appended as an exhibit to its motion an excerpt from corporate finance textbook which defines the term as the equation that Lincoln has proposed. Lincoln also appends the affidavit and report of their proposed expert who agrees that the phrase in dispute represents an algebraic finance equation. The expert cites and attaches to his report excerpts from finance text books to Freddie Mac and Fannie Mae contract prepayment provisions which also define the equation exactly.

      On the other hand, in support of Carriage Way's interpretation of the phrase, they have supplied the court with an affidavit and report from their proposed expert. But the expert's report lacks authority for his position. Instead of a precise formula that can be determined in exact terms, Carriage Way's expert argues that undefined "reinvestment risks" need to be included in the calculation of the "effective annual compounded yield." The phrase "reinvestment risk" is not included in the loan agreement. Carriage Way's expert merely asserts that the "effective annual compounded yield" must be interpreted to reflect the reinvestment risk related to interim scheduled payments of principal and interest. The expert then defines the reinvestment risk as "the risk that loan payments reinvested at a rate lower than the stated loan rate."

      As an alternative to Lincoln's standard definition, Carriage Way's expert makes an alternative prepayment calculation. The formula that the expert uses is:

> the prepayment formula contained in the Notes, along with the assumption that both the prepayment proceeds and the regularly scheduled monthly loan payments are invested at the Treasury Rate.

The expert's alternative equation compounds the interest of the principal balance using the Treasury Rate. This is wholly unsupported by the contract terms which state in part:

> the present value ... obtained by subtracting the effective annual compound

*Carriage Way v. Lincoln National*, # 04-71544

yield... of the United States Treasury Issues.... from the effective annual
compounded yield of this Note, multiplied by the outstanding principal balance of
this Note,  multiplied by the number of years... remaining...

Another problem with Carriage Way's formula is that equation doesn't look to the Note's
stated rate despite the fact that the plain language requires it.  Similarly, the formula requires that
the effective annual compounded yield of the US Treasury Issues be subtracted from the
effective annual compounded yield of the Notes rate, yet nowhere in the expert's equation does
this subtraction take place.  Instead, the expert's equation merely relies on this idea of
"reinvestment risks" which somehow forces the rate of reinvestment to equal to the US Treasury
Issues rate, which is then applied to the principal balance payment schedule to come up with the
number 6.08% as the effective annual compounded yield.  The expert does not attempt to
calculate the effective annual compounded yield of the US Treasury Issues.  It should also be
noted that during oral argument the Court asked Plaintiff for the support for their expert's
formula, Plaintiff responded by stating that the support comes from "reliance upon their own
reinvestment assumptions" and "other commonly understood principles of finance."  Plaintiff did
not explain what those commonly understood principles of finance were and then merely said
that the expert made the assumption that rate of return should include reinvestment risks because
it was implicit in the formula.

After examining the extrinsic evidence this Court is convinced that Lincoln has offered
the only reasonable interpretation of the phrase "effective annual compounded yield."  This
Court agrees that the formula is a standard algebraic formula used in finance contexts.  If a
contract were to require the calculation of the area of a specific rectangle but did explicitly
define the equation, the only reasonable interpretation would be to define "the area of the
rectangle" as its length times its width.  Similarly, the only reasonable interpretation of the term
"effective annual compounded yield" is the standard equation:

$$(1 + R/T)^T - 1 = EACY$$

Even though there is an ambiguity, summary judgment is appropriate since the extrinsic
evidence presented to this Court supports only one of the conflicting interpretations.  *United*

*Carriage Way v. Lincoln National*, # 04-71544

*Rentals*, 355 F.3d at 406.

**IV. The Outstanding Balance**

The second issue involves whether the Carriage Way made their scheduled September 2003 loan payment prior to paying the outstanding balance. If this were the case, the prepayment penalty would be lower because the outstanding balance at the time of prepayment would be smaller.

According to the agreement the loan obligation was due on the first of the month unless in the event the first day of the month is a Saturday, Sunday or legal holiday, payment shall be due on the immediately preceding business day. Carriage Way prepaid the outstanding balance of the loans on August 29, 2003. In this case, September 1, 2003 was Monday, Labor Day, making the preceding business day August 29, the date in which prepayment was made. As a result, Carriage Way argues that Lincoln was required to credit these as regularly scheduled payments causing the outstanding balance to decrease to $5,356,325.92 and $126,219.98 on both of the loans.

Lincoln contends that the contract required the prepayment penalty to be calculated on the outstanding principal balance at time prepayment is made citing the unambiguous language of the contract, which states that the prepayment calculation requires "multipl[ing] by the outstanding principal balance (at the time of prepayment) of this Note."

Under Lincoln's theory, Carriage Way's single wire transfer on August 29, 2003 immediately prepaid the loan and prepayment penalty. Had Carriage Way made a separate payment in the amount of a regularly scheduled payment on the loans, then at the time of prepayment later in the day that money would be subtracted from outstanding principal balance. Instead, Carriage Way made the prepayment in one wire transfer in the amount of the "payoff demand statement."

The Court finds that the Note's plain words for the prepayment provision in relation to the outstanding balance to be unambiguous are sufficient for this Court to enter summary judgment in favor of Carriage Way. The fact that the due date for the scheduled payment was the same date as the date of prepayment should not be used to harm the Plaintiff. Defendant

*Carriage Way v. Lincoln National*, # 04-71544

argues that the fact there was not two transactions helps their position.  The contract says nothing about requiring two transactions on the date of prepayment or scheduled monthly payments.  Plaintiff paid a sum of money to Defendant on the due date for its monthly installment.  Part of that money was to pay that monthly installment thereby reducing the outstanding balance in which to calculate the prepayment penalty.

**V. Conclusion**

For these reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED EXCEPT**

**IT IS FURTHER ORDERED** that Defendant pay Plaintiff the difference between the two calculations involving the outstanding balance issue.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the request for class certification is **MOOT**.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: June 8, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 8, 2006  by electronic and/or ordinary mail.

s/Theresa E. Taylor
Case Manager